# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

| | | |
|---|---|---|
| **SHANIQUIA STANLEY**, | ) | |
| | ) | |
| *Plaintiff,* | ) | CIVIL ACTION NO. 1:26-CV-00086-JRH-BKE |
| | ) | |
| v. | ) | |
| | ) | |
| **BOYS & GIRLS CLUBS OF GREATER AUGUSTA, INC.,** | ) | |
| | ) | |
| *Defendant.* | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Shaniquia Stanley ("Plaintiff" or "Stanley") files this response in opposition to Defendant Boys & Girls Clubs of Greater Augusta, Inc.'s ("Defendant" or "BGCGA") motion to dismiss Plaintiff's claims. As outlined in the Complaint, Defendant targeted Plaintiff based on her multiple sclerosis and Crohn's disease disabling conditions, removed only Plaintiff from its group health plan to attempt to minimize annual escalating premiums, promised Plaintiff equal coverage in an "individual" plan, and ignored Plaintiff's continued requests for accommodation with benefits afforded to all other employees with knowledge that the substitute coverage was far from equal and that Plaintiff was unable to obtain necessary treatment. When Plaintiff's requests and complaints did not stop, Defendant promptly terminated Plaintiff's employment for "performance," a false and pretextual reason for BGCGA's discriminatory and/or retaliatory motives. The Complaint's allegations accordingly state plausible claims under the ADA and ERISA.

1

Despite styling its motion as one brought pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant ignores the applicable standard and asks the Court to decide disputed questions of fact, decline to consider the facts alleged in the Complaint in the light most favorable to Plaintiff, consider added facts not part of the pleadings, and adopt Defendant's arguments, including those not supported by any factual or legal citation.  As outlined below, Defendant's motion should be denied as to each of Plaintiff's ADA and ERISA claims, and Plaintiff is entitled to discovery to prove them.

I.     Argument and Citation of Authority

   A.  The Applicable Standard

"To survive a motion to dismiss" Plaintiff's Complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Where, as here, a plaintiff "pleads factual content that allows the court to draw the reasonable inference" that a defendant engaged in conduct in violation of the ADA and/or ERISA, a Rule 12(b)(6) motion should be denied. *Id.* (citing *Twombly*, 550 U.S. at 556); *City of Miami v. Wells Fargo & Co.,* 923 F.3d 1260, 1264 (11th Cir. 2019) (reversing early dismissal, "[a]t this preliminary stage in the lawsuit, …. [t]he question for now is whether, accepting the allegations as true, as we must, the City has said enough to make out a plausible case—not whether it will probably prevail").

   B.  Whether Plaintiff Knowingly and Voluntarily Executed a Release of Any of Her
       Claims Presents Questions of Fact.

Defendant maintains that the release attached to its motion as an exhibit is enforceable and requires dismissal of all of Plaintiff's claims as a matter of law.  At the same time Defendant

acknowledges that the Court must apply a number of fact-intensive factors in its consideration of whether the release Plaintiff signed was knowing and voluntary, assuring the Court that no such actual consideration need occur, because all of "[t]hese factors favor BGCGA." (Dkt. 11 at 8.)

But the Eleventh Circuit makes clear that "waiver" in the context of an employee "knowingly and voluntarily releas[ing] an employer from liability … with a full understanding of the terms of the agreement" actually "must be closely scrutinized." *Beadle v. City of Tampa,* 42 F.3d 633, 635-36 (11th Cir.), *cert. denied* 515 U.S. 1152, 115 S.Ct. 2600, 132 L.Ed.2d 846 (1995) (lower court did not err in finding plaintiff did not knowingly and voluntarily execute the release where plaintiff "spent a short amount of time reviewing … did not consult with an attorney" and was in a "stressful financial situation").   The Court must consider "the totality of the circumstances:"

> factors that guide a court include: the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

*Id.* Defendant's assumptions include that because it – a self-described "nonprofit, community-based organization … for children" – hired Plaintiff as a director and later promoted her to a Vice President role, the Court can conclude, "so she was educated and had sophisticated business experience" as to the first factor. (Dkt. 11 at 1, 8.) The Complaint, however, provides no detail about either criterion.  As to the remaining factors, Defendant again asserts that Plaintiff's own "allegations about the release are meritless" and/or "inconsistent." *Id.* at 7.

The plain language of the release and the allegations in Plaintiff's Complaint (which must be construed in Plaintiff's favor) confirm otherwise:

- As to the amount of time the plaintiff considered the agreement before signing it, a) Plaintiff alleges that during her "termination meeting, Defendant told Plaintiff unless she signed a severance agreement immediately, her health insurance would be cancelled immediately," (Dkt. 1 at ¶95); b) Plaintiff alleges Defendant "did not give Plaintiff even a period of twenty-four (24) hours to consider it and included no revocation rights," (*id.*); c) the release itself states "[y]our employment with BGCGA will be terminated today, June 3, 2024," "[y]ou are to have no further communication with current employees of BGCGA as it pertains to any work matter or regarding your time with BGCGA," and provides no language at all regarding time for consideration;" and Plaintiff signed and dated it the same day. (Dkt. 11-1.)

- With respect to the "clarity" of the release, a) it includes language that claims are released "except to the extent such claims cannot be released under applicable law," with no explanation, followed by "[r]eleased claims include any and all claims arising under federal, state or local laws;" b) it lists released claims which cannot be released, such as "the Fair Labor Standards Act," without Court approval;[1] c) it includes a release of age discrimination claims without complying with the required language under  the Older Workers Benefit Protection Act, rendering an age release unenforceable;[2] d) it includes no reference whatsoever to ERISA or any vested rights and does not include a covenant not

---

[1] *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352–55 (11th Cir.1982).

[2] *See* 29 U.S.C. §§ 621-634. Defendant suggests the Court should disregard the OWBPA "defect[s]" because Plaintiff has not plead an ADEA claim (Dkt. 11 at 7), but the failure to include such disclosures for an employee in her fifties (Dkt. 6-1) is further support for the absence of evidence to support the knowing and voluntary test.  For example, had Defendant complied with the OWBPA factors, the release would have language including that Plaintiff had twenty-one (21) days to consider it and should consult an attorney, among other safeguards.

to sue; e) as noted above it specifically warns Plaintiff that she cannot communicate with any other employee of Defendant for any purpose – precluding any questions on her part regarding the release; and f) Plaintiff was simply presented with the document to sign and had no part in negotiating its terms. (Dkt. 11-1; Dkt. 1 at ¶95.)

- Plaintiff had no opportunity to consult with an attorney, and the release included no language regarding her right to same, recommending she should consult an attorney, and/or that she had a certain amount of time to revoke acceptance.  (Dkt. 11-1; Dkt. 1 at ¶95.)

- Finally, as to consideration, Plaintiff alleges that along with being told she must sign "immediately" or "her health insurance would be cancelled immediately," she was also told "she would forfeit her final *earned* paycheck unless she signed the severance agreement," (Dkt. 1 at ¶¶ 95-96 (emph. added)), such that if she did not take what was offered on the spot, Defendant would also unlawfully withhold her wages already due.

Precedent confirms the timing factor alone requires denial of Defendant's motion, and the absence of any participation in negotiating or draft bolsters this conclusion. *Beadle*, 42 F.3d at 635-36; *Puentes v. United Parcel Serv., Inc.,* 86 F.3d 196, 198–200 (11th Cir. 1996) (reversing summary judgment, holding where plaintiffs testified they "were only given twenty-four hours to decide whether to sign the releases, and that they understood that the offer would not be valid longer than that. UPS denies that it imposed a twenty-four hour time limitation upon the plaintiffs, but that is an issue to be decided by a jury," and plaintiffs were handed a release and played no role in negotiating it).[3] In addition to the factors identified by the Eleventh Circuit, the release at issue

---

[3] Defendant's reliance on *Myricks v. Fed. Rsrv. Bank of Atlanta*, 480 F.3d 1036, 1041 (11th Cir. 2007) is misplaced. In *Myrick*, the Court affirmed summary judgment where "Myricks had enough time to consider the clear terms of the release, was educated, was not threatened with any unlawful

provides it is governed by Georgia law, and Defendant fails to cite a single Georgia case regarding the issues of fraud and duress specifically detailed in the Complaint.[4] (Dkt. 1 at ¶¶ 94-99 (Plaintiff told to sign immediately or lose health insurance that day and earned wages would not be paid; had serious medical conditions requiring ongoing care that Defendant knew she had been unable to access)); (Dkt. 11-1).  For all of these reasons, the release does not support early dismissal.

      C.  Plaintiff's ADA Claims Are Not Subject to Dismissal.

         1.  Plaintiff's Charge exhausted her failure to accommodate claim.

Defendant's argument that Plaintiff's EEOC Charge did not exhaust Plaintiff's failure to accommodate claim under the ADA also fails to support dismissal of the claim under Rule 12(b)(6).  The Charge asserted "I have been discriminated against … in violation of the Americans with Disability Act" and alleged:

> I have multiple disabilities, which I informed my employer of. Around January 2024, I was removed from my employer's group health insurance and provided an individual health insurance plan with less coverage. My employer explained that this was necessary, as maintaining me on the group policy was too expensive. After I complained repeatedly that my new individual insurance policy was not covering all of the medical treatments I needed due to my disabilities, as the group policy had done, my employer manufactured a false reason to fire me.

---

action, and consulted an attorney." *Id. Paylor v. Hartford Fire Ins. Co.,* 748 F.3d 1117, 1124-25 (11th Cir. 2014) is also factually distinguishable. (enforcing release of FMLA claims where release gave employee 21 days to consider, was clearly worded, and recommended consulting an attorney).

[4] *See* (Dkt. 1 at ¶¶95-99); *Gaines v. United Health Grp.*, No. 1:17-CV-01488, 2019 WL 13301703, at *4 (N.D. Ga. Nov. 15, 2019) (applying Georgia law to deny summary judgment based on severance agreement; finding a "jury could find the threat to withhold benefits and a final paycheck induced Plaintiff to sign the agreement, irrespective of her personal finances.  Assuming he said it, he must have intended her to weigh this threat while making her decision.").  Defendants of course cannot make new state law arguments in their reply.

(Dkt. 6-1).  Plaintiff's removal from Defendant's group health plan due to her disabilities and assignment to an individual policy that did not provide the same coverage and her termination form the basis for her Count I discrimination claim under the ADA. (Dkt. 6-1; Dkt.1 at ¶¶ 37-44, 51-60, 66, 68, 74-86, 101-107.)  Allegations that she "complained repeatedly" about her new individual HMO insurance not covering what the group PPO policy provided further provides factual support for both her failure to accommodate (Count II) and retaliation (Count III) claims under the ADA (Dkt.1 at ¶¶41-44, 51-56, 59, 60, 62, 66-68, 72-86, 108-116, and 117-124.)

As alleged in the Charge and the Complaint, when Plaintiff complained about her removal from coverage afforded to every other employee of Defendant, Defendant ignored her requests and eventually advised her that there was no PPO-level coverage for her and she would have to accept the HMO-level substitute, confirming Defendant's failure to engage in the interactive process and failure to accommodate her with respect to the terms and conditions of her employment.  (Dkt. 6-1; Dkt. 1 at ¶¶ 41-44, 51-56, 59, 60, 62, 66-68, 72-86); *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, (11th Cir. 1997) (explaining ADA "defines 'discrimination' to include 'not making reasonable accommodations,'" and considering whether employer's refusal to "allow[] him to continue to remain on medical leave under Defendant's Salary Continuation Plan" was denial of reasonable accommodation; affirming summary judgment where plan was "a matter of business policy" and extending coverage for a year was not "reasonable" where plaintiff acknowledged leave would have been indefinite) (cit. omitted); *EEOC v. Harrison Poultry, Inc.*, No. 2:14-CV-00227-WCO-JCF, 2016 WL 8309041 at *11 (N.D. Ga. June 1, 2016) (recommending denial of summary judgment on standalone claim based on leave as reasonable accommodation as well as on discriminatory discharge claim).

Defendant correctly notes that in the Eleventh Circuit an ADA plaintiff's claims are "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." (Dkt. 11 at 10); *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). Here, Plaintiff's facts alleged in her Charge were "like or related" to all three of her ADA failure to accommodate, discrimination, and retaliation claims, and as the Eleventh Circuit found in *Batson v. Salvation Army,* 897 F.3d 1320, 1327 (11th Cir. 2018), dismissal for failure to exhaust is simply not warranted.[5] In *Batson,* the Court explained that despite the plaintiff's failure to check the "retaliation" box or otherwise allege retaliation,

> The information included in the Charge was sufficiently "related to" Batson's retaliation claim to satisfy the exhaustion requirement. Batson argues that her ADA failure to accommodate claim is inextricably linked to her ADA retaliation claim, because her accommodation request was the basis for TSA's retaliation against her, and her termination, mentioned in the Charge was the specific form the retaliation took. Given this link, an EEOC investigation of Batson's failure to accommodate claim would have 'at least in some fashion' uncovered Batson's retaliation claim.

*Id.* Here, Plaintiff specifically checked "retaliation" and "disability," said she had been discriminated against because of her disability, and under the plain language of the ADA, disability discrimination includes "not making reasonable accommodations." 42 U.S.C. §12112(b)(5)A).

Moreover, Defendant's contention that Plaintiff's "charge made no mention that she 'requested assistance' with her lack of coverage" simply ignores the "complained repeatedly" language in the Charge, again despite the requirement to consider the facts in the light most

---

[5] Plaintiff is also of course permitted to plead a variety of claims in the alternative, and the Eleventh Circuit recognizes that the same facts must be considered in support of different claims. *Santana v. Telemundo Network Group,* No. 22-13879, 2026 WL 180272, *14 (11th Cir. Jan. 22, 2026) (district court's failure to also consider events motivated by retaliation for purposes of plaintiff's gender discrimination claim was "incorrect").

favorable to Plaintiff for purposes of Defendant's motion.[6] (Dkt. 11 at 10; Dkt. 6-1.)  Finally, in this context, any "procedural technicalities are not to stand in the way," and procedural ambiguities must be viewed "in favor of the complaining party." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460-61, 465 (5th Cir. 1970). For all of these reasons, Plaintiff's failure to accommodate claim is "like or related to, or grew out of the allegations contained in her EEOC charge." *Gregory*, 355 F.3d at 1280; *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1345–46 (11th Cir. 2022) (finding plaintiff exhausted claim that she was retaliated against for testifying against company in a pregnancy discrimination case although her charge focused on race discrimination).

### 2.  Plaintiff's Complaint plausibly asserts a failure to accommodate claim.

Defendant's alternate arguments that Plaintiff's failure to accommodate claim is "implausible" are likewise without merit.  First, Defendant contends that "accommodations are for limitations from impairments, not limitations from benefits," ignoring the plain language of the ADA's regulations.[7] (Dkt. 11 at 13.)  The regulations explain that "reasonable accommodation"

---

[6] Defendant's suggestion that Plaintiff's Complaint does not "amplify, clarify, or more clearly focus" the allegations in Plaintiff's Charge (Dkt. 11 at 11) is without basis. For example, Plaintiff alleges that she repeatedly "informed Defendant that the substitute insurance coverage prevented her from accessing medically necessary care" and "requested assistance, correction of the insurance problem, and/or restoration" to the group coverage plan for employees, and Defendant refused to return her to the group coverage. (Dkt. 1 at ¶¶111, 112; *see also* ¶¶ 113 (failed to engage in interactive process), 60-62, 77, 79, 84, 85 (differences in coverage, refusal to return Plaintiff to group coverage PPO plan).)

[7] Defendant cites only *Beasley v. O'Reilly Auto Parts,* 69 F.4th 744, 757 (11th Cir. 2023), but *Beasley* offers no support.  In fact, *Beasley* explains that the ADA "plainly prohibits 'discrimination against a qualified individual on the basis of disability in regard to … terms, conditions, and privileges of employment.' The terms, conditions, and privileges of employment are more than just the essential functions of a job." 69 F.4th at 757, *citing* 42 U.S.C. §12112(a); 29 C.F.R. § 1630.2(o)(1). In addition, in reversing summary judgment on the plaintiff's claim that the employer failed to provide him with accommodations by providing an interpreter, the *Beasley* Court explained, "So what do we hold about whether the ADA's requirement that an employer provide an employee with reasonable accommodations extends beyond those that will enable him

9

includes "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. §1630.2(o)(1)(iii). As one example, courts regularly recognize a failure to provide leave benefits as a reasonable accommodation claim. *See Wood v. Green,* 323 F.3d 1309, 1314 (11th Cir. 2023); *Duckett*, 120 F.3d at 1225.

Defendant's second argument that Plaintiff's failure to accommodate claim fails to show she suffered an adverse employment action "because of any alleged failure to accommodate" is also not dispositive. (Dkt. 11 at 13.) Plaintiff was promptly terminated after pushing for accommodation. (Dkt. 1 at ¶¶84-86.) In addition, contentions that Plaintiff "alleges she had to pay her premiums but not that they increased (nor could she truthfully do so, as BGCGA increased its payment of the employer costs to prevent Plaintiff's premiums from rising)," and that with respect to providers "she had been living in August for over two-and-a-half years without establishing local care" and "cannot hold BGCGA accountable for an issue entirely outside its control," ask the Court to consider alleged facts outside the scope of the pleadings (and obviously in a light more favorable to Defendant). More importantly, the Complaint *does* allege Defendant refused to engage in the interactive process, failed to provide accommodation, and Plaintiff suffered adverse treatment, including but not limited to inability to obtain necessary medication and treatment, paying the cost of "Angle Insurance" that other employees were not required to pay,  the requirement that Plaintiff would bear the cost of seeing a primary care doctor to obtain a referral

---

to perform the essential functions of his job? Nothing, really. There is enough dicta on that subject already. And any firm conclusion we reach about it in this case will only add more dicta." *Id.* at 760.

before seeing a neurologist for her multiple sclerosis treatments, and because Defendant's removal of Plaintiff from a PPO group plan to an HMO plan without the same coverage was not, despite Defendant's contentions, equivalent. *Bacon v. Frazier*, No. CV419-300, 2020 WL 624281, at \*5 (S.D. Ga. Feb. 10, 2020), *report and recommendation adopted*, No. 4:19-CV-300, 2020 WL 1558107 (S.D. Ga. Apr. 1, 2020) ("Plaintiff's alleged treatment following her request for accommodations supports a retaliation claim"); (Dkt. 1 at ¶¶111, 112, 43; *see also* ¶¶ 113 (failed to engage in interactive process), 60-62, 77, 79-84, 85 (differences in coverage, inability to obtain necessary treatment for her disability, refusal to return Plaintiff to group coverage PPO plan).)

3. Plaintiff's Complaint plausibly asserts ADA discrimination and retaliation claims.

To the extent that Defendant argues Plaintiff's ADA discrimination claim is likewise barred for failure to allege an adverse employment action, all of the outlined adverse employment actions above (that apply equally to any of Plaintiff's ADA claims), including denial of benefit coverage, failure to accommodate, failure to engage in the interactive process, and termination satisfy this element of the discrimination claim.  (Dkt. 11 at 13; Dkt. 1 at ¶104 "Defendant discriminated against Plaintiff because of her disabilities by, among other things, removing her from the group health insurance plan, forcing her onto inferior individual coverage, altering the terms, conditions, and privileges of her employment, and terminating her employment.") Defendant's apparent intent to rely on the excessive cost of keeping Plaintiff's group coverage offered to employees and Plaintiff's promotions while working for Defendant as defenses to Plaintiff's discrimination claims offer no basis for Rule 12(b)(6) dismissal, nor does that allegation make Plaintiff's claims "implausible." (Dkt. 11 at ¶¶12-13.)

11

Similarly, the sole basis for Defendant's assertion that the Complaint "fails to state a claim of retaliation" is that it is allegedly "predicated entirely on Plaintiff complaining about her health insurance," "but that was not protected activity under the ADA, as already established." (Dkt. 11 at 14.)   Plaintiff is unaware of any part of Defendant's motion "already establish[ing]" that Plaintiff's allegations do not support "protected activity."  In any event, the Complaint details, for example, that after being specifically informed she was removed from the group health plan because of her disabling medical conditions, she sought and was denied reasonable accommodations as to the terms and conditions of her employment, repeatedly notified Defendant that her coverage was delayed and was in no way equivalent to the group health coverage plan from which she alone was removed because of her disabling medical conditions, reported that the alleged comparable plan would require additional payments for primary physicians, reported that she could not receive care or her medication (which Defendant acknowledged), and continuously opposed Defendant's intentional discrimination on the basis of her disability.  (Dkt. 1 at ¶¶37, 39, 40, 41, 51-55, 66-68, 80-81, 118-119.)  In short, the Complaint plausibly alleges protected activity. *See, e.g., Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (for ADA relation claim, the "firsts element may be met by a request for a reasonable accommodation"); *McHenry v. McDonough*, No. 1:20-CV-5064-CAP-JKL, 2021 WL 11719873, *10 (N.D. Ga. Oct. 7, 2021) (denying motion to dismiss retaliation claim, noting cases "decided at summary judgment … do not speak to what level of specificity a plaintiff must provide in her complaint to show that she engaged in protected activity" and "viewing the[] allegations in totality, it is plausible to infer that Plaintiff complained about discrimination …. Whether testimony and other evidence bears this out

12

is a question for another day."); *report and recommendation adopted,* No. 1:20-CV-5064-CAP-JKL, 2021 WL 11719862 (N.D. Ga. Oct. 29, 2021).

   D. Plaintiff's Claims in Counts IV and V Survive Dismissal.

  Plaintiff's Complaint asserts claims for interference and retaliation under ERISA section 510, 29 U.S.C. §1140 in Count IV and for health-status discrimination under ERISA section 29 U.S.C. § 1182 in Count V.  Defendant seeks dismissal of these claims with sweeping statements and unsupported assertions.[8]  As to Count IV Defendant contends that "[n]owhere in the complaint does Plaintiff allege that she sought plan benefits, that BGCGA knew she did so, and that antagonism or adverse action followed as a result." (Dkt. 11 at 14.) In reality, however, the Complaint does specifically allege these facts: Defendant had a group health plan which was an employee welfare benefit plan within the meaning of ERISA, that Defendant sponsored, maintained, administered, and/or participated in (Dkt. 1 at ¶126); Plaintiff was a participant and/or beneficiary of that group health plan and entitled to ERISA plan benefits until she, and no one else, was removed from the plan "because of Plaintiff's medical conditions and coverage" (Dkt. 1 at ¶¶30, 37–40, 127, 129); Defendant forced Plaintiff to accept inferior individual coverage and pay additional costs not borne by other employees entitled to group health plan coverage (Dkt. 1 at ¶¶36-44, 59-62); Plaintiff consistently complained that the alternate health insurance plan was not comparable, that she could not access it, and that she could not obtain necessary benefits and treatment (which Defendant acknowledged), and Defendant informed Plaintiff she had "no option"

---

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (only adequately supported arguments require response). New arguments in a reply are likewise impermissible. *Kellner v. NCL (Bahamas), LTD*, 753 F. App'x 662, 667 (11th Cir. 2018); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) .

but the HMO plan and that the PPO plan group coverage was not available to her (Dkt. 1 at ¶¶66, 68, 72, 76-85); and within seeks terminated Plaintiff's employment for false and pretextual reasons to prevent and/or interfere with Plaintiff's ability to utilize Defendant's ERISA plan benefits and/or in retaliation for complaining about and attempting to exercise her rights to utilize Defendant's ERISA plan benefits. (Dkt. 1 at ¶¶86-88, 129-130.) In short, Plaintiff's Complaint plausibly alleges that Defendant fired her under circumstances suggesting interference with and/or retaliation for exercising ERISA rights was a motivating factor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (the "plausibility standard" for a motion to dismiss "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the claim).

For the same reasons, Plaintiff's Count V health-status discrimination and benefits interference claim survives Defendant's motion.  Here, Defendant makes a single factual argument (that Defendant's movement of Plaintiff to the individual HMO was not due to Plaintiff's "health status" makes the claim "implausible" (Dkt. 11 at 14)),[9] repeating its requests that the Court simply disregard the plain language of the Complaint outlined in the paragraph above, including, but not limited to, Defendant's CEO's statement to Plaintiff that "Defendant's health-insurance premiums were increasing because of Plaintiff's medical conditions and coverage" and that Defendant would provide her with individual coverage, thereby violating federal health-status nondiscrimination requirements by "singling Plaintiff out because of her disabilities, medical conditions, claims experience, expected healthcare costs, and need for expensive treatment." (Dkt. 1 at ¶¶37-39, 138.)

---

[9] Legal or factual contentions mentioned in briefing without substantive argument and/or raised only in passing are deemed abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014).

As detailed above,[10] Plaintiff further alleges Defendant required Plaintiff to "pay … a contribution which is greater than such … contribution for a similarly situated individually … on the basis of any health status-related factor …." 29 U.S.C. §1182. The Complaint thus plausibly states a claim in Count V.

Defendant's only other argument regarding Count V is that it is not liable as a "matter of law" because 29 U.S.C. §1182 does not apply to "individual employers like BGCGA." (Dkt. 11 at 15.) Defendant is again mistaken. As at least one other court recently recognized, Section 1182's "terms 'group health plan' and 'health insurance issuer' do not define the only entities that can be held liable for a violation of ERISA's anti-discrimination provisions." *Schultz v. Glens Falls Hosp.*, No. 1:25-CV-00581-MAD-PJE, 2026 WL 850332, at *5 (N.D.N.Y. March 26, 2026). As the *Schultz* court explained,

> For purposes of Section 1182, ERISA defines a "group health plan" to mean "an employee welfare benefit plan[.]" 29 U.S.C. § 1191b(a)(1). ERISA defines an "employee welfare benefit plan" to mean:
>
> > any plan, fund, or program which was heretofore or is hereafter ***established or maintained by an employer*** or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any

---

[10] For example, Plaintiff had to pay the cost of "Angle Insurance" that other employees were not required to pay, and Plaintiff would bear the cost of seeing a primary care doctor to obtain a referral before seeing a neurologist for her multiple sclerosis treatments because Defendant's removal of Plaintiff from a PPO group plan to an HMO plan without the same coverage was not, despite Defendant's contentions, equivalent. (Dkt. 1 at ¶¶111, 112, 43; *see also* ¶¶ 113, 60-62, 77, 79-84, 85.)

15

> benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).
>
> 29 U.S.C.A. § 1002(1) (emphasis added). "The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C § 1002(5).

*Id.* at 5-6. The *Schultz* court accordingly "disagree[d]" with the employer's contention that the plaintiff's Section 1182 claim "must be dismissed because there is no private right of action … and because [the employer]is not a proper defendant as it is not a 'group health plan' or 'health insurance issuer." *Id.* at 5-6 (holding further, "Plaintiff … argues that "nothing … precludes suit against a plan sponsor; it simply provides that plans may be sued 'as an entity,' not that only plans may be sued. The Court agrees.); (Dkt. 1 at ¶136.).

II.     Conclusion

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss. In the alternative, should the Court find any of Plaintiff's claims are insufficiently pleaded, Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15, which should be freely given at this early stage of the proceedings.

Respectfully submitted this 22nd day of July, 2026.

*/s/ Tracey T. Barbaree*
Tracey T. Barbaree
GA Bar No. 036792
MOELLER BARBAREE LLP
1355 Peachtree Street N.E.
Suite 1100
Atlanta, GA  30309
Phone: 404.748.9122
Email: tbarbaree@moellerbarbaree.com

*/s/ J. Stephen Mixon*
J. Stephen Mixon
GA Bar No. 514050
THE MIXON LAW FIRM
3344 Peachtree Road
Suite 800
Atlanta, GA 30326
Phone: 770.955.0100
Email: steve@mixon-law.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that Plaintiff's Response in Opposition to Defendant's Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system on July 22, 2026, which will send notice of electronic filing to the following counsel of record:

Jeffrey S. Wilson, Email: Jeff.Wilson@jacksonlewis.com

*/s/ Tracey T. Barbaree*
Counsel for Plaintiff

17